IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

TIFFANY M. TAYLOR,                    )
                                      )
          Plaintiff,                  )
                                      )
     v.                               )     CIVIL ACTION NO. 1:08cv1014-WC
                                      )
MICHAEL J. ASTRUE,                    )
Commissioner of Social Security,      )
                                      )
          Defendant.                  )

**MEMORANDUM OPINION AND ORDER**

## I.      INTRODUCTION

Plaintiff Tiffany M. Taylor applied for disabled adult child benefits under Title II of

the Social Security Act ("the Act"), 42 U.S.C. §§ 402(d), and supplemental security income

under Title XVI of the Act, § 1381 *et seq.*  Her applications were denied at the initial

administrative level.    Plaintiff then requested and received a hearing before an

Administrative Law Judge (ALJ).  Following the hearing, the ALJ issued a decision in which

she found Plaintiff not disabled.  Tr. 22.  After accepting additional evidence from Plaintiff,

the Appeals Council ultimately rejected her request for review of the ALJ's decision.  The

ALJ's decision consequently became the final decision of the Commissioner of Social

Security (Commissioner).[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The

---

[1]      Pursuant to the Social Security Independence and Program Improvements Act of
1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human
Services with respect to Social Security matters were transferred to the Commissioner of Social
Security.

case is now before the Court for review under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge.  Pl.'s Consent to Jurisdiction (Doc. #14); Def.'s Consent to Jurisdiction (Doc. #15).  Based on the Court's review of the record and the briefs of the parties, the Court REVERSES the decision of the Commissioner.

## II.   STANDARD OF REVIEW

Plaintiff filed her application for disabled adult child benefits based on the earnings record of her father, Eddie Taylor.  To obtain such benefits, Plaintiff is required to demonstrate, among other things, that she suffers from a disability before attaining the age of 22, and that this disability continued without interruption through the date of her application.  42 U.S.C. § 402(d)(1).  Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

(1) Is the person presently unemployed?

---

[2]      A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of Impairments]

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id.* at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id.* It also can contain both exertional and nonexertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To

---

[3]       *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or call a vocational expert (VE).  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual.  *Phillips*, 357 F.3d at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.

The Court's review of the Commissioner's decision is a limited one.  This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  *See also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.").  A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

---

[4]         *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings.   . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was twenty years old at the time of the hearing before the ALJ.  Tr. 488. Plaintiff completed her high school education.  Tr. 491.[5]  Following the administrative hearing, and employing the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision (Step 1).  Tr. 24.  At Step 2, the ALJ found that Plaintiff suffers from the following "medically determinable impairments:"   "carpal tunnel syndrome, thyroid disease, a learning disorder/borderline intellectual functioning, a non-specific sleep disorder, and depression."  Tr. 24.  The ALJ then determined that none of the "medically determinable impairments" are severe, alone or in combination, within the meaning of applicable law.  Accordingly, the ALJ found that "[t]he claimant has not been under a 'disability,' . . . from January 29, 2003 through the date of this decision," Tr. 29, and is therefore not entitled to benefits as a disabled adult child or supplemental security income.

## IV.   PLAINTIFF'S CLAIMS

---

[5]      Plaintiff participated in special education classes during her schooling.  Tr. 153.

Plaintiff alleges the ALJ's decision should be reversed because the ALJ erred in failing to find any of Plaintiff's impairments severe[6] and failing to consider evidence of Plaintiff's "severe" headaches.  Pl.'s Brief (Doc. #18) at 5-8.  The Court will address the claims in the order in which they are discussed in her brief.

## V.    DISCUSSION

### A.    The ALJ's finding of no severe impairments.

Although the ALJ found that Plaintiff suffers from numerous "medically determinable impairments," the ALJ found that no such impairments are "severe" within the meaning of the regulations.  A "severe" impairment is defined as "any impairment or combination of impairments which significantly limits [the individual's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  The United States' Court of Appeals for the Eleventh Circuit has explained that a "severe" impairment "causes more than a minimal limitation on a claimant's ability to function."  *Davis v. Shalala*, 985 F.2d 528, 532 (11th Cir. 1993). Conversely, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1521(a).  "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.  It is a

---

[6]    Specifically, Plaintiff contends that the ALJ erred in failing to find Plaintiff's borderline intellectual functioning and depression severe impairments.  Pl.'s Brief (Doc. #18) at 6-8.

threshold inquiry where only the most trivial impairments are rejected." *O'Bier v. Comm'r of Soc. Sec.*, 2009 WL 1904706 at *1 (11th Cir. July 2, 2009) (citations omitted).  The Plaintiff's burden in establishing a severe impairment is "mild."  *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

Evidence in the record amply establishes Plaintiff's borderline intellectual functioning and depression.  *See. e.g.,* Tr. 338, 344, 345, 386, 397.  While some courts have held that a "diagnosis of borderline intellectual functioning should be considered severe when the diagnosis is supported by sufficient medical evidence," *Nicola v. Astrue*, 480 F.3d 885, 887 (8th Cir. 2007), it does not appear that the Eleventh Circuit has adopted any such *per se* rule. *See Edwards by Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985) ("At the least, therefore, an I.Q. below 80 *may* be a severe impairment.") (emphasis supplied).  Thus, the ALJ was required to assess the functional limitations imposed by Plaintiff's borderline intellectual functioning and depression in order to decide their severity.

In order to determine the severity of mental impairments like those relevant to this claim, the Commissioner is required, at all levels of the administrative process, to apply the "special technique" of review set forth in 20 C.F.R. §§ 404.1520a and 416.920a. *See Nicola*, 480 F.3d at 887.  *See also Binion v. Astrue*, 2008 WL 4493238 (M.D. Al. Oct. 3, 2008). Under the "special technique," after determining whether or not the claimant suffers from some mental impairment(s), the Commissioner then rates the degree of functional limitation resulting from the impairment(s).  The Commissioner rates the degree of limitation imposed

in four distinct "functional areas" including: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." § 404.1520a(c)(3). The Commissioner uses a five-point scale (none, mild, moderate, marked, and extreme) in rating the first three functional areas, and a four-point scale (none, one, two, three, and four or more) in rating episodes of decompensation. If the degree of limitation found in all of the first three areas is "none" or "mild," and there are no periods of decompensation, then the Commissioner will generally find the impairment not severe. 20 C.F.R. § 1520a(d)(1). If the ALJ's scoring of the claimant's limitations compels a finding that the claimant's mental impairment(s) is severe, the ALJ then proceeds to determine "if it meets or is equivalent in severity to a listed mental disorder." § 1520a(d)(2).

The Commissioner is required to document his application of the special review technique at all stages in the administrative adjudication of a disability claim. 20 C.F.R. § 1520a(e). During the initial stages of review, application of the "special technique" is facilitated by the completion of a Psychiatric Review Technique Form ("PRTF") by a qualified professional. During review by the ALJ, the ALJ is required "to complete a PRTF and append it to the decision, or incorporate its mode of analysis into [the ALJ's] findings and conclusions. Failure to do so requires remand." *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005). Importantly, the ALJ is required to document his or her application of the technique as to each of the given functional areas, and failure to do so precludes judicial review of the ALJ's decision. *Id.* Failure to properly apply the special review

8

technique requires remand even if the ALJ's ultimate finding that the claimant is not disabled is supported by substantial evidence. *Id.  See also Binion*, 2008 WL 4493238 at *4.

The ALJ's treatment of these various considerations lacks clarity.  The ALJ did not complete a PRTF and append it to her decision.  Likewise, there is no clearly demarcated portion of the opinion in which the ALJ "incorporates [the special technique's] mode of analysis into [her] findings and conclusions."  Instead, within the context of summarizing the record medical evidence, the ALJ appears to sporadically and imprecisely document some application of the "special technique."  For instance, in discussing the findings of the consultative examination by Dr. McKeown (Tr. 336-340), the ALJ recounts Dr. McKeown's opinion that Plaintiff suffers "no significant limitations in [her] social functioning and her report of daily activities was essentially normal."  Tr. 27.  The ALJ then appears to convey her own findings about the severity of Plaintiff's mental impairments:

> Ms. Taylor has borderline IQ scores and has received special education services for a learning disorder but there is no evidence [of] significant subaverage intellectual functioning that prevents her from understanding, remembering or carrying out simple instructions.  There is no evidence of any significant limitations in Ms. Taylor's daily activities or social functioning or of more than 'mild' limitations in her concentration, persistence or pace due to depression.  The record does not document any episodes of decompensation since January 2003 due to depression.

Tr. 27.  This passage, if it is intended to stand as the ALJ's required application of the "special technique" of review of Plaintiff's mental impairments, is problematic in many respects.  First, the ALJ's scoring of Plaintiff's functional limitations does not fully comport

with the five-point scale provided in the regulations.  The regulations do not contemplate judgments about whether or not the claimant suffers "significant" limitations in the given functional areas.  Rather, the ALJ is required to score the claimant's functional limitations in terms of "[n]one, mild, moderate, marked, and extreme."  20 C.F.R. § 404.1520a(c)(4). Furthermore, it does not appear that the ALJ even scored Plaintiff's limitations in the given functional areas related to her borderline intellectual functioning.  That is, while the ALJ does appear to find that Plaintiff suffers no more than "mild" limitations in her daily activities, social functioning, and concentration, persistence, and pace, the ALJ explicitly links that finding to her evaluation of Plaintiff's impairment of depression. Tr. 27.  The most the ALJ says about any limitations caused by Plaintiff's borderline intellectual functioning is that "there is no evidence [of] significant subaverage intellectual functioning that prevents her from understanding, remembering or carrying out simple instructions."  Tr. 27.  While "understanding, remembering or carrying out simple instructions" is one of the enumerated "basic work activities" with which the regulations are concerned in assessing whether an impairment is severe, it is a consideration which is not included among the functional areas germane to the "special technique" of review of mental impairments set forth in the regulations.   Thus, the ALJ's opinion does not reflect a proper application of the Commission's special technique for review of mental impairments and is due to be reversed and remanded.  *Moore*, 405 F.3d at 1214; *Binion*, 2008 WL 4493238 at *4.[7]

---

[7]        The ALJ's rejection (*see* Tr. 28) of the opinion given in the PRTF completed by Dr. Warren (Tr. 341-354), as well as the unmentioned but corroborative opinion of Dr. Simpson

## VI.   CONCLUSION

The Court has carefully and independently reviewed the record and concludes the decision of the Commissioner is REVERSED and this matter REMANDED for further proceedings consistent with this opinion.  A separate judgment will issue.

DONE this 23rd day of December, 2009.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

---

(*see* Tr. 395), that Plaintiff's mental impairments cause "moderate" difficulties in maintaining concentration, persistence, or pace cannot suffice as an adequate application of the special technique.  While one may presume the ALJ concurred with Dr. Warren's finding that Plaintiff has only "mild" restriction of activities of daily living and difficulties in maintaining social functioning, the regulations and applicable case law do not appear to contemplate such implicit documentation of the ALJ's findings.  As discussed above, the ALJ provided no clear documentation of her findings with respect to Plaintiff's limitations in the four areas of functioning attributable to her impairment of borderline intellectual functioning.

Finally, the Court is also leery of the reasons underlying the ALJ's rejection of Dr. Warren's opinion.  The ALJ states that Dr. Warren's opinion is disfavored because it "is not consistent with the minimal, conservative treatment required for the mental impairments or with the claimant's ability to maintain 'decent' grades in school."  Tr. 28.  The ALJ does not explain, and it is not clear to the Court upon review of the record, what treatments have been available and provided to Plaintiff as treatment for her borderline intellectual functioning, other than the provision of special education classes throughout her education.  Moreover, there is nothing in the record which indicates that a claimant's successful completion of a school's special education curriculum indicates that claimant's propensity and readiness for entry into the working world.  While rendering no opinion on the ultimate severity of Plaintiff's impairment of borderline intellectual functioning, the Court is mindful of the Eleventh Circuit's recent admonition that, in considering whether an impairment is "severe" within the meaning of the regulations, "only the most trivial impairments are rejected."  *O'Bier*, 2009 WL 1904706 at *1.  Without further evidence in the record, it is difficult for the Court to embrace the notion that borderline intellectual functioning, which necessitated the intervention of special education through the claimant's life, amounts to an impairment so "trivial" and "slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  *Id.*